20605

Edna O. BROOME, Appellant, v. John H. TRULUCK, and North
American Door Company, Inc., of which John H. Truluck is,
Respondents.

(241 S. E. (2d) 739)

228

*Murdaugh, Peters, Parker & Eltzroth,* of Hampton, *for Appellant,*

*Young, Clement & Rivers,* of Charleston, *for Respondent,*

February 13, 1978.

LEWIS, Chief Justice:

This action was commenced on June 26, 1975 to recover for injuries sustained by appellant, when she caught her foot on a raised threshold and fell as she was proceeding through a door at one of the entrances to the garage of Walterboro

Motor Sales Company in Walterboro, South Carolina, on July 10, 1973. The premises of Walterboro Motor Sales Company were renovated in 1962 and the door in question was installed at that time, with installation substantially completed in December 1962. Appellant brought this action against the manufacturer of the door and respondent, the architect, who designed the building, alleging negligence in the design and manufacture of the door.

This appeal is from an order of the lower court granting respondent's motion for summary judgment on the ground that the present action is barred by Section 15-3-640 of the 1976 Code of Laws, which provides that any action brought to recover damages for any deficiency in the design of any improvement in real estate against the person furnishing the design must be brought within ten (10) years after substantial completion of the improvement. Appellant concedes here, as she did in the lower court, that if Section 15-3-640 is constitutional, this action is barred, because the improvement designed by respondent, which allegedly caused appellant's injury in 1973, was substantially completed in December 1962, more than ten years after the improvement. The issues in this appeal relate solely to the constitutionality of the foregoing statute.

Appellant contends that Section 15-3-640 is unconstitutional because it violates: (1) Article 3, Section 17 of the South Carolina Constitution in that the title does not sufficiently identify the subject of the Act; (2) Article 1, Section 9 of the South Carolina Constitution which provides that every person shall have a speedy remedy in the courts for wrongs sustained; and (3) the equal protection and due process clauses of the State (Article 1, Section 3) and Federal (Fourteenth Amendment) Constitutions.

We need consider only the third ground of appellant's attack upon the constitutionality of the statute, since it, in our opinion, clearly violates the constitutional guaranty of equal protection of the law.

The statute in question (Section 15-3-640) is as follows:

All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, an improvement to real property, for injury to property, real or personal, arising out of any deficiency, or for injury to the person or for a wrongful death arising out of any deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within ten years after substantial completion of such improvement.

It is apparent from the descriptive terms used that the sole object, purpose and scope of the foregoing statute was to grant to architects, engineers, and contractors in the real estate construction industry immunity from suit for their torts after the lapse of ten years from the date of the substantial completion of the improvement causing injury or damage.

While the General Assembly has the power in passing legislation to make a classification of its citizens, the constitutional guaranty of equal protection of the law requires that all members of a class be treated alike under similar circumstances and conditions, and that any classification cannot be arbitrary but must bear a reasonable relation to the legislative purpose sought to be effected. *Gasque, Inc. v. Nates*, 191 S. C. 271, 2 S. E. (2d) 36

The question then is whether there is a sound basis for regarding architects, engineers, and contractors engaged in the improvement of real property as a distinct and separate class for the purpose of granting immunity from suit after the lapse of ten (10) years. Certainly, such classification must fall if the benefits (immunity) granted to them is denied to others similarly situated. The latter result clearly follows when we consider that architects, engineers, and contractors are not the only persons whose

negligence in the improvement of real property may cause damage or injury to others. Neither the owners nor the manufacturers of components that go into the construction of the building are protected. In fact, the owner is specifically excluded from the protection of the statute. Section 15-3-670, 1976 Code of Laws. Only architects, engineers, and contractors are singled out for preferential treatment. While it is broadly stated that a vital distinction exists between architects, engineers, and contractors on the one hand, and owners and manufacturers, on the other, such vital distinction is no where pointed out such as to justify granting immunity to one group and not to the other. No rational basis appears for making such distinction. *Skinner v. Anderson,* 38 Ill. (2d) 455, 231 N. E. (2d) 588; *Fujioka v. Kam,* 55 Haw. 7, 514 P. (2d) 568.

The Illinois Supreme Court considered a similar statute to the present one, but containing a four (4) year limitation period. The court pointed out:

That the statute benefits all architects and construction contractors is significant only if the benefits conferred upon them are not denied others similarly situated.

In discussing the discriminatory effect of the statute upon others similarly situated, the court in *Skinner* soundly reasoned:

More important is the fact that of all those whose negligence in connection with the construction of an improvement to real estate might result in damage to property or injury to person more than four years after construction is completed, the statute singles out the architect and the contractor, and grants them immunity. It is not at all inconceivable that the owner or person in control of such an improvement might be held liable for damage or injury that results from a defective condition for which the architect or contractor is in fact responsible. Not only is the owner or person in control given no immunity; the statute takes away his action for indemnity against the architect or contractor.

*Green v. Zimmerman,* S. C., 238 S. E. (2d) 323, Smith's Advance Sheet October 22, 1977, is inapplicable. In *Green* the statute involved was based upon a reasonable classification to accomplish valid legislative purposes.

The judgment of the lower court is accordingly reversed and the cause remanded for further proceedings.

NESS and RHODES, JJ., concur.

GREGORY, J., concurs in result.

LITTLEJOHN, J., dissents.

GREGORY, Justice (concurring in result):

I, too, would reverse, but on a ground not relied on in the majority opinion.

Article III, Section 17, Constitution of the State of South Carolina, 1895, provides:

Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title.

The purpose of this provision "is to prevent the General Assembly from being misled into the passage of bills containing provisions not indicated in their titles, and to apprise the people of the subject of proposed legislation and thus give them opportunity to be heard if they so desire. Accordingly, while it is to be construed with great liberality so as not to embarrass or obstruct needed legislation, liberality of construction should not be extended to such a point as to foster the abuses which its provisions are designed to prevent." *Colonial Life & Accident Insurance Co. v. S. C. Tax Commission,* 233 S. C. 129, 103 S. E. (2d) 908 (1958).

Sections 15-3-630 through 15-3-670, 1976 Code of Laws of South Carolina, were enacted as Act No. 1071 of the 1970 Acts of the General Assembly. The title to Act No. 1071 reads as follows:

An Act To Amend The Code of Laws Of South Carolina, 1962, By Adding Sections 10-151 Through 10-155, So As To Provide A Limitation For The Bringing Of Actions In

Contract Or Tort Malpractice, Error Or Mistake Against Architects, Professional Engineers And Contractors.

Although Act No. 1071 relates to but one subject, that subject is not expressed in its title. The most cursory reading of Act No. 1071 (Sections 15-3-630 through 15-3-670) reveals the Act does not provide a statute of limitations as its title purports, but instead operates to bar a cause of action before it accrues. This distinction is material.

I would reverse on the ground the questioned statutes were enacted in violation of Article III, Section 17 and do not reach the other grounds asserted by appellant for reversal.

LITTLEJOHN, Justice (dissenting):

I respectfully dissent and would affirm the lower court. In my view the order of Judge George F. Coleman properly disposes of all of the issues submitted to this Court, and I am of the view that his order should be printed as our directive. Inasmuch as a majority of the Court takes a contrary view and reverse that order, I will not direct that it be printed in its entirety, but will quote that part of the order which deals with the due process issue used as a basis for the reversal. It follows:

## ORDER OF JUDGE COLEMAN

. . . . .

The plaintiff states that the Act is unconstitutional as being in violation of Article 1, Section 3 of the South Carolina Constitution:

"The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws."

In the case of *Mary E. Carter v. Hartenstein, supra,* the Court of Arkansas said:

"Further, a vital distinction, nonetheless, exists between owners or suppliers and those engaged in the professions and occupations of design and building. This is not arbitrary or unreasonable. It is a legitimate and practical exercise of the legislative function."

In the case of *Rosenberg v. Town of North Bergen, et al.,* 61 N. J. 190, 293 A. (2d) 662 (1972) in holding the State statute constitutional, the Court stated:

"Thus plaintiff's alleged cause of action did not arise until she fell and sustained injury. Of course this was many years after the ten-year period fixed by the statute had expired. She claims that the statute, in its application to her, amounts to a deprivation of due process, since, as she expresses it, the statute bars her cause of action before it has arisen. This formulation suggests a misconception of the effect of the statute. It does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovery. The injured party literally has *no* cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress. The function of the statute is thus rather to define substantive rights than to alter or modify a remedy. The Legislature is entirely at liberty to create new rights or abolish old ones as long as no vested right is disturbed."

In the case of *Josephs v. Burns,* 260 Or. 493, 491 P. (2d) 203 (Or. 1971) held a like statute constitutional. It is interesting to note that the Oregon statute had a ten-year limit. The Court said:

"Plaintiffs contend that a statute which purports to extinguish a remedy before the legally protected right becomes actionable is unconstitutional because it contravenes Article I, Section 10, of the Oregon Constitution, which provides

that 'every man shall have remedy by due course of law for injury done him in his person, property, or reputation.'

"Assuming that the effect of ORS 12.115(1) is to abolish causes of action in tort where the damage does not result within ten years after the negligent acts or commissions complained of, we see nothing unconstitutional in so doing. In *Noonan v. City of Portland*, 161 Or. 213, 249, 88 P. (2d) 808 (1939), we stated that Article I, Section 10, did not inhibit the legislature from altering common law rights against municipalities, and said:

" '* * * In *Silver v. Silver*, 280 U. S. 117, 50 S. Ct. 57, 74 L. Ed. 221, * * *, the court said that it was unnecessary to "elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." We held to similar effect in sustaining the validity of a statute which is attacked under Art. 1, § 10, Oregon Constitution, was not intended to give anyone a vested right in the law either statutory or common; nor was it intended to render the law static * * *.'

"It has always been considered a proper function of legislatures to limit the availability of causes of action by the use of statutes of limitation so long as it is done for the purpose of protecting a recognized public interest. It is in the interest of the public that there be a definite end to the possibility of future litigation resulting from past actions. It is a permissible constitutional legislative function to balance the possibility of outlawing legitimate claims against the public need that at some definite time there be an end to potential litigation."

Beginning with the case of *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wash. (2d) 528, 503 P. (2d) 108, decided by the Supreme Court of Washington *en banc* in 1972, the Court said:

"The third issue raised on appeal is whether RCW 4.16.300 *et seq.* is constitutional.

"Appellants contend that the statute is special class legislation forbidden by the Washington Constitution, Article 1, Section 12. On the same basis, appellants allege that the statute in question violates the United States Constitution, amendment 14, section 1, which forbids states to pass any laws denying equal protection to any of their citizens.

"Since 1961, more than twenty states have enacted similar statutes relative to actions arising out of defects in improvements to real property. One of these states is the neighboring state of Oregon, which has just recently held its similar statute is constitutional. *Josephs v. Burns,* 260 Or. 493, 93 Or. Adv. Sh. 1340, 491 P. (2d) 203 (1971).

"The case of *Skinner v. Anderson,* 28 Ill. (2d) 455, 231 N. E. (2d) 588 (1967), declared the Illinois statute unconstitutional as being special legislation in favor of only architects and contractors. The same cannot be said of RCW 4.16.300 *et seq.* because the scope of the Washington provision is not limited as to vocation. The subject statute bars actions against *any person* having constructed, altered or repaired any improvement upon real property."

In the recent case of *Freezer Storage, Inc. v. Armstrong Cork. Co.,* 341 A. (2d) 184 (Pa. 1975), holding a like statute constitutional, the Court said:

" 'So long as there is no omission of a remedy for the enforcement of a right for which a remedy existed when the right accrued, a want of due process is in no way involved.' *Agostin v. Pittsburgh Steel Foundry Corp.,* 354 Pa. 543, 549, 47 A. (2d) 680, 683 (1946). As a general principle '(i)t is not within the power of the legislature, under the guise of a limitation provision, to cut off an existing remedy entirely, since this would amount to a denial of justice, and, manifestly, an existing right of action cannot be taken away by legislation which shortens the period of limitation to a time that has already run.' 51 Am. Jur. 2d, Limitation of Actions, 528, at 613, *quoted in, Saylor v. Hall,* 497 S. W. (2d) 218, 225 (Ky. 1973). "Our analysis must necessarily

begin with the question of whether the 1965 Act removed an existing remedy or whether it removed the underlying right itself. The distinction is subtle, yet important. In Pennsylvania there is authority, albeit less than definitive, for the proposition that the legislature may abolish a cause of action theretofore existing. If the 1965 Act abolished a cause of action before it accrued then no violation of due process is involved. No 'omission of a remedy for the enforcement of a right for which a remedy existed when the right accrued . . . ,' *Agostin v. Pittsburgh Steel Foundry Corp., supra,* 354 Pa. at 549, 47 A. (2d) at 683, has occurred.

"The Supreme Court of Oregon in *Josephs v. Burns,* 260 Or. 493, 491 P. (2d) 203 (1971) in upholding a similar statute of ultimate repose against a like due process attack held that '(a)ssuming that the effect of (the statute) is to abolish causes of action in tort where the damage does not result within ten years after the negligent acts or omissions complained of, we see nothing unconstitutional in so doing.' *Id.* at 503, 491 P. (2d) at 207. Quoting from an earlier Oregon case, the court stated that the due process clause of the Oregon Constitution 'was not intended to give anyone a vested right in the law either statutory or common; nor was it intended to render the law static . . . .' *Id.,* quoting, *Noonan v. City of Portland,* 161 Or. 213, 248, 88 P. (2d) 808, 822 (1939). The Oregon Court further noted:

" '(i)t has always been considered a proper function of legislatures to limit the availability of causes of action by the use of statutes of limitation so long as it is done for the purpose of protecting a recognized public interest.' "

*Id.* at 503, 491 P. (2d) at 207-08.

"The Supreme Court of New Jersey addressed itself to the due process argument in *Rosenberg v. Town of North Bergen,* 61 N. J. 190, 293 A. (2d) 662 (1972). Distinguishing the New Jersey statute from the typical statute of limitation, the court noted that

"(t)he time within which suit may be brought under this statute is entirely unrelated to the accrual of any cause of action * * *

" 'It does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovery. The injured party literally has no cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress. The function of the statute is thus rather to define substantive rights than to alter or modify a remedy. The Legislature is entirely at liberty to create new rights or abolish old ones as long as no vested right is disturbed.' *Id.* at 199, 293 A. (2d) at 666-67 (emphasis original)".

I feel that this particular statute involved exercises the legislative requirements and does not contravene the constitution as far as the constitutionality of the Act is concerned, and therefore I grant the defendant Truluck's motion for summary judgment.